# Exhibit A

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BROWN, Individually and On Behalf Of All Others Similarly Situated<br><br>**Plaintiff,**<br><br>v.<br><br>WIRECARD AG, MARKUS BRAUN, JAN MARSALEK, BURKHARD LEY, ALEXANDER VON KNOOP, SUSANNE STEIDL, WULF MATTHIAS, and ERNST & YOUNG GMBH WIRTSCHAFTSPRUEFUNGSGESELLSC HAFT,<br><br>**Defendants.** | **No. 2:20-cv-03326-AB**<br><br>**CLASS ACTION** |

**NOTICE OF MOTION AND MOTION OF LAWRENCE GALLAGHER FOR:**
**(1) INTERVENTION PURSUANT TO FED. R. CIV. P. 24;**
**(2) STAY OF PSLRA LEAD PLAINTIFF SELECTION PROCESS; AND**
**(3) TRANSFER OF VENUE**

010821-11/1336922 V1

**TO: ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Lawrence Gallagher ("Gallagher"), by and through his counsel, will and does hereby move this Court for the entry of an Order: (i) pursuant to Fed. R. Civ. P. 24, to intervene in the above-captioned action; (ii) to stay the Lead Plaintiff selection process in the above-captioned action, imposed by the Private Securities Litigation Reform Act of 1995, pending resolution of Gallagher's motion to intervene and transfer; and (iii) to transfer the above-captioned action to the U.S. District Court for the Central District of California for consolidation with *Mark Dalpoggetto v. Wirecard AG*, et al., No. 2:19-cv-00986-FMO-SK.

Respectfully submitted,

**DATED:** August 27, 2020

**SPECTOR ROSEMAN & KODROFF, P.C.**

By: _/s/ Jeffrey L. Kodroff_
Jeffrey L. Kodroff (55780)
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
jkodroff@srkattorneys.com

*Liaison Counsel for C.D. Cal. Lead Plaintiff*
*Lawrence Gallagher*

Reed R. Kathrein
Danielle Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com

010821-11/1336922 V1

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Lead Counsel for C.D. Cal. Lead Plaintiff*
*Lawrence Gallagher*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BROWN, Individually and On Behalf Of All Others Similarly Situated<br><br>**Plaintiff,**<br><br>v.<br><br>WIRECARD AG, MARKUS BRAUN, JAN MARSALEK, BURKHARD LEY, ALEXANDER VON KNOOP, SUSANNE STEIDL, WULF MATTHIAS, and ERNST & YOUNG GMBH WIRTSCHAFTSPRUEFUNGSGESELLSCHAFT,<br><br>**Defendants.** | **No. 2:20-cv-03326-AB**<br><br><u>**CLASS ACTION**</u> |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR:**
**(1) INTERVENTION PURSUANT TO FED. R. CIV. P. 24;**
**(2) STAY OF PSLRA LEAD PLAINTIFF SELECTION PROCESS; AND**
**(3) TRANSFER OF VENUE**

010821-11/1337076 V2

**TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND ...............................................................................................2

III.   ARGUMENT ....................................................................................................5

    A.    Legal Standard .....................................................................................5

        1.   Intervention .................................................................................5

        2.   Stay of Proceeding .......................................................................6

    B.    Intervention As A Matter of Right Under Rule 24(A) Is Warranted .....................7

        1.   Gallagher's Motion to Intervene is Timely. ................................7

        2.   Gallagher Has a Significant Protectable Interest in the Subject of the *Brown* Action. ....................................................10

        3.   Lead Plaintiff Gallagher's Interest Could Be Impaired by the Disposition of the *Brown* Action. ............................................11

        4.   Gallagher's Interest is Not Completely Protected by the Parties in the *Brown* Action. .....................................................12

    C.    In The Alternative, Permissive Intervention Under Rule 24(B) Is Warranted ......12

    D.    A Stay Of The Lead Plaintiff Selection Process In The *Brown* Action Is Warranted Pending Resolution Of Gallagher's Motion To Intervene ...................14

        1.   The Promotion of Judicial Economy. ........................................14

        2.   Balance of Harm to the Parties .................................................15

        3.   The Duration of the Requested Stay ..........................................18

    E.    This Court Should Transfer This Action ............................................18

        1.   Transfer Is Appropriate Under The First-Filed Rule. ...............18

        2.   Alternatively, Transfer Is Appropriate Under Section 1404(A). ...............21

        3.   This Court Should Not Appoint A Lead Plaintiff Before Transferring The Case. ...........................................................23

IV.    CONCLUSION .................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Amerimar Cherry Hill Assocs. Ltd. P'ship v. United States Fid. & Guar. Co.*,
1991 WL 137153 (E.D. Pa. July 22, 1991)....................................................................11

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,
2017 WL 2118285 (M.D. Pa. May 16, 2017)...............................................................13

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)...............................................................9, 11

*Benjamin v. Dep't of Pub. Welfare of Pa.*,
701 F.3d 938 (3d Cir. 2012)..................................................................................5, 6

*Brody v. Spang*,
1991 WL 24954 (E.D. Pa. Feb. 22, 1991) ................................................................6, 10

*Cheyney State Coll. Faculty v. Hufstedler*,
703 F.2d 732 (3d Cir. 1983).......................................................................................6

*Ciolli v. Iravani*,
2008 WL 4412053 (E.D. Pa. Sept. 23, 2008) ...............................................................6

*Cirulli v. Bausch & Lomb, Inc.*,
2009 WL 545572 (E.D. Pa. Mar. 4, 2009)................................................................6, 14

*City of New Castle v. Purdue Pharma L.P.*,
2018 WL 3438841 (E.D. Pa. July 16, 2018)..............................................6, 8, 14, 16

*Cont'l Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960).............................................................................................21, 23

*Harris v. Pernsley*,
820 F.2d 592 (3d Cir. 1987)......................................................................................7

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.*
*Loan Litig.*,
418 F.3d 277 (3d Cir. 2005)......................................................................................10

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*,
2018 WL 5095666 (D. Del. Oct. 19, 2018) ...................................................................5

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941).......................................................................................18

*Crum & Forster Specialty Ins. Co. v. Am. Diamond Builders, Inc.*,
 2020 WL 4437032 (E.D. Pa. July 31, 2020)................................................................5, 12

*In re Cyberonics Inc. Sec. Litig.*,
 468 F. Supp. 2d 936 (S.D. Tex. 2006) .............................................................................15

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
 2008 WL 2520809 (D. Del. June 23, 2008)...................................................................8, 16

*Dipple v. Odell*,
 870 F. Supp. 2d 386 (E.D. Pa. 2012) ..............................................................................15

*EEOC v. Univ. of Pa.*,
 850 F.2d 969 (3d Cir. 1988).............................................................................................20

*Evanston Ins. Co. v. Tristar Prods.*,
 2020 U.S. WL 4671443 (E.D. Pa. Aug. 11, 2020) .......................................................11, 12

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013)....................................................................9

*Finn v. Barney*,
 2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) ................................................................14, 17

*Gallagher v. Ocular Therapeutix, Inc.*,
 2017 WL 4882488 (D.N.J. Oct. 27, 2017)........................................................................23

*Goggins v. All. Capital Mgmt., L.P.*,
 279 F. Supp. 2d 228 (S.D.N.Y. 2003)...............................................................................22

*Grodko v. Teva Pharm. Indus.*,
 2018 WL 10847659 (E.D. Pa. Apr. 10, 2018) ..................................................................23

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995).....................................................................................21, 22, 23

*Kabak v. Becton, Dickinson & Co.*,
 2020 WL 3056281 (D.N.J. June 9, 2020) .......................................................................9, 14

*Kershner v. Komatsu Ltd.*,
 305 F. Supp. 3d 605 (E.D. Pa. 2018) ............................................................................21, 22

*Landis v. North Am. Co.*,
 299 U.S. 248 (1936)...................................................................................................6, 14

*In re Lehman Bros. Sec., & ERISA Litig.*,
 No. 1:09-md-02017-LAK-GWG (S.D.N.Y. Apr. 24, 2009)...............................................10

*Maritima De Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011)...................................................................17

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)...............................................................................................12

*North v. Merck & Co.*,
2005 WL 2921638 (W.D.N.Y. Nov. 4, 2005) ..................................................................16

*Pa. Truck Lines, Inc. v. Int'l Bhd. of Teamsters, etc.*,
1990 WL 59305 (E.D. Pa. May 4, 1990)..........................................................................11

*Panitch v. Quaker Oaks Co.*,
2017 WL 1333285 (E.D. Pa. Apr. 5, 2017) ............................................................... *passim*

*Royal Park Investments SA/NV v. Bank of Am. Corp.*,
941 F. Supp. 2d 367 (S.D.N.Y. 2013)...............................................................................16

*Royal v. Rochford*,
2012 WL 259388 (D.N.J. Jan. 27, 2012) ......................................................................8, 16

*Selective Way Ins. Co. v. Head*,
2011 WL 1459000 (E.D. Pa. Apr. 14, 2011) ....................................................................10

*Smithkline Beecham Corp. v. Apotex Corp.*,
2004 WL 1615307 (E.D. Pa. July 16, 2004)......................................................................6

*Southland Gaming of the V.I. v. Gov't of the V.I.*,
2019 WL 2106569 (D.V.I. May 14, 2019) .........................................................................6

*In re UBS AG Sec. Litig.*,
No. 1:07-cv-11225-RJS (S.D.N.Y. Apr. 7, 2009)...............................................................9

*Trbovich v. UMW*,
404 U.S. 528 (1972)..........................................................................................................11

*UCB, Inc. v. Hetero USA Inc.*,
277 F. Supp. 3d 687 (D. Del. 2017)....................................................................................6

*United States v. Columbia Pictures Indus., Inc.*,
88 F.R.D. 186 (S.D.N.Y. 1980) .......................................................................................12

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)..........................................................................................................21

*Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*,
2009 WL 1845236 (E.D. Pa. June 26, 2009).....................................................................22

*Wallach v. Eaton Corp.,*
    837 F.3d 356 (3d Cir. 2016).........................................................................................7

*Weber v. Basic Comfort, Inc.,*
    155 F. Supp. 2d 283 (E.D. Pa. 2001) ...................................................................21, 22

*Yearwood v. Johnson & Johnson, Inc.,*
    2012 WL 2520865 (D. Md. June 27, 2012)..................................................................8

## Federal Statutes

15 U.S.C. § 78aa(a).............................................................................................................21

15 U.S.C. § 78u-4 .................................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B) .................................................................................................24

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...........................................................................................23

15 U.S.C. §78u-4(a)(3)(B)(iv) ..............................................................................8, 15, 18

28 U.S.C. § 1391(c)(3)........................................................................................................21

28 U.S.C. § 1404(a) ..............................................................................................19, 21, 23

## Other Authorities

Fed. R. Civ. P. 23................................................................................................................10

Fed. R. Civ. P. 24..........................................................................................................1, 3, 5

Fed. R. Civ. P. 24(a) .................................................................................................7, 11, 12

Fed. R. Civ. P. 24(a)(2).......................................................................................5, 6, 7, 10

Fed. R. Civ. P. 24(b) ....................................................................................................5, 12

Fed. R. Civ. P. 24(b)(1)(B) .........................................................................................5, 12

Manual for Complex Litigation (Fourth) (2004)..............................................................15

Lawrence Gallagher ("Gallagher"), the court-appointed Lead Plaintiff in *Mark Dalpoggetto v. Wirecard AG, et al.*, No. 2:19-cv-00986-FMO-SK (the "*Dalpoggetto* Action" and, collectively with the *Brown* Action, the "Related Actions") respectfully submits this memorandum of law in support of his motion: (i) pursuant to Fed. R. Civ. P. 24, to intervene in the above-captioned action *Carol A. Brown v. Wirecard AG, et al.*, No. 2:20-cv-03326-AB (the "*Brown* Action"); (ii) to stay the Lead Plaintiff selection process in the *Brown* Action, imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), pending resolution of Gallagher's motion to intervene and transfer; and (iii) to transfer the *Brown* Action to the U.S. District Court for the Central District of California for consolidation with the *Dalpoggetto* Action.

## I. INTRODUCTION

The instant *Brown* Action represents an improper end-run around the PSLRA lead plaintiff selection process and the already-existing *Dalpoggetto* Action where Lawrence Gallagher has already been appointed Lead Plaintiff. Both the earlier-filed *Dalpoggetto* Action and the *Brown* Action were filed by the Rosen Law Firm.[1] Surprisingly, having failed to move for or obtain the position of lead counsel in the *Dalpoggetto* Action, the Rosen Law Firm has opted to file the duplicative *Brown* Action, now that the fraud and its depth have been confirmed in the press.

The *Brown* Action merely expands the original class period and adds a new defendant based on the same fraudulent allegations that the Rosen Law Firm originally pled in the *Dalpoggetto* Action. Both cases are based substantively on the same set of facts and stem from

---

[1] *See* Exhibit A of Declaration of Danielle Smith In Support Of Motion of Lawrence Gallagher for: (1) Intervention Pursuant To Fed. R. Civ. P. 24; (2) Stay Of PSLRA Lead Plaintiff Selection Process; and (3) Transfer Of Venue ("Smith Decl., Ex. A").

the fraudulent accounting practices by Defendant Wirecard AG that were initially uncovered through a series of *Financial Times* articles in 2019, and that culminated in the revelation by KPMG that approximately $2.2 billion were in fact missing from funds identified by the *Financial Times*, and the arrest of multiple high-level Wirecard officials in 2020. The *Dalpoggetto* Action has incorporated the new revelations in its Second Amended Complaint, and the *Brown* Action is both improperly filed and redundant. Accordingly, the Court should grant this motion in its entirety.

## II.     BACKGROUND

On February 8, 2019, the *Dalpoggetto* Action was filed in U.S. District Court for the Central District of California, by the Rosen Law Firm, alleging violations of the federal securities laws by Wirecard AG ("Wirecard" or the "Company") and certain of its top officers. Specifically, Dalpoggetto alleged that, during a class period extending from April 7, 2016 through February 1, 2019, Wirecard and the individual defendants concealed a massive fraud and criminal acts through false accounts and forged documents in connection with Wirecard's international business transactions.[2] The fraud was initially uncovered by a whistleblower providing relevant information to the *Financial Times*, which subsequently published articles exposing the fraud to the public. *See generally Dalpoggetto* Action ECF No. 1. Pursuant to the PSLRA, Dalpoggetto's counsel issued a press release that same day which advised investors, *inter alia*, of the pendency of the action and their right to seek appointment as Lead Plaintiff on or before April 9, 2019. *See Dalpoggetto* Action ECF No. 14-1.

---

[2] As discussed below, upon subsequent disclosures, the *Dalpoggetto* Action was later amended to add Defendant Ernst and Young ("E&Y") and the class period was expanded to include the period from August 17, 2015 and June 26, 2020. *Dalpoggetto* Action ECF No. 82.

On April 9, 2019, Gallagher filed a motion for appointment as Lead Plaintiff, asserting that he incurred substantial losses as a result of his purchase of Wirecard securities and was the most "adequate plaintiff" as defined in the PSLRA. *Dalpoggetto* Action ECF No. 16. No other putative class members filed competing motions, and neither Dalpoggetto nor the defendants in the *Dalpoggetto* Action opposed Gallagher's appointment as Lead Plaintiff. Accordingly, Gallagher's motion for Lead Plaintiff on behalf of the class in the *Dalpoggetto* Action was unopposed, and the court subsequently appointed Gallagher as Lead Plaintiff in that action on May 6, 2019.[3] At the time of this submission, Gallagher has served as Lead Plaintiff before the court in the *Dalpoggetto* Action for well over a year.

On July 7, 2020 – nearly a year and a half after the filing of the *Dalpoggetto* Action – the *Brown* Action was filed in U.S. District Court for the Eastern District of Pennsylvania. *Brown* Action ECF No. 1. As mentioned, this newer case has been filed by the same counsel that initially filed the *Dalpoggetto* Action, the Rosen firm. Like the *Dalpoggetto* Action, the *Brown* Action stems from the same fraud allegations that were initially uncovered by the *Financial Times*. Both cases allege that Defendants concealed from the investing public significant issues relating to Wirecard's accounting practices. Specifically, like the *Dalpoggetto* Action, the *Brown* Action alleges that the Defendants concealed a concerted effort to fraudulently inflate sales and profits at Wirecard businesses and international affiliates between August 17, 2015 and June 26, 2020, both dates inclusive. *See generally Brown* Action ECF No. 1.

That the *Brown* Action concerns the same fraudulent conduct at issue in the *Dalpoggetto* Action is indisputable. The subsequent disclosures revealed this year merely confirmed the fraud

---

[3] *See* Exhibit A of Declaration of Danielle Smith In Support Of Motion of Lawrence Gallagher for: (1) Intervention Pursuant To Fed. R. Civ. P. 24; (2) Stay Of PSLRA Lead Plaintiff Selection Process; and (3) Transfer Of Venue ("Smith Decl., Ex. B").

exposed by the *Financial Times* and a whistleblower, the extent of the fraud, and the failure of the Company's auditors to conduct a proper audit. Lead Plaintiff Gallagher immediately sought leave, obtained approval from the Court and Defendants, and filed a Second Amended Complaint, adding Wirecard's auditor, E&Y, as a defendant and alleging an expanded class period extending at least from August 17, 2015 through June 26, 2020—the same class period currently at issue in the *Brown* Action. In the meantime, Counsel for plaintiff in the *Brown* Action issued a press release announcing the pendency of the *Brown* Action and telling Wirecard investors that they had until September 8, 2020 to seek appointment as Lead Plaintiff in the *Brown* Action (the "E.D. Pa. PSLRA Notice").

To protect the class and his interests in full, Gallagher issued his own press release notifying investors of the action already pending, and now seeks to intervene in the *Brown* Action and requests that the Court transfer this action to the Central District of California, ultimately to be consolidated with the *Dalpoggetto* Action.

The claims in the *Brown* Action are based on the same fraudulent conduct alleged in the *Dalpoggetto* Action. Accordingly, the publication of the E.D. Pa. PSLRA Notice, advising Wirecard investors that they may seek appointment as Lead Plaintiff in that action on or before September 8, 2020 – nearly **1.5 years** after the PSLRA-imposed deadline in the *Dalpoggetto* Action – represents an improper end-run around the requirements of the PSLRA, undermines the order appointing Gallagher as Lead Plaintiff in the *Dalpoggetto* Action, and threatens to cause significant prejudice to the class of investors on whose behalf Gallagher now represents as Lead Plaintiff.

Thus, transfer of the *Brown* Action to the Central District of California – the District where the *Dalpoggetto* Action is pending – is compelled by the PSLRA, and would ensure the

action is prosecuted in a coordinated fashion and overseen by District Court Judge Fernando M. Olguin, who has been presiding over the *Dalpoggetto* Action since its inception.

For these same reasons, Gallagher respectfully requests the right to intervene, a stay of the PSLRA-imposed Lead Plaintiff selection process in the *Brown* Action and the transfer of this action to California. The Related Actions are properly adjudicated in one consolidated proceeding, with Gallagher as the duly appointed Lead Plaintiff pursuant to the clear dictates of the PSLRA.

Gallagher has contacted defendants' counsel in the first-filed *Dalpoggetto* Action, who have not been served in this action. They take no position on transfer at this time.

## III. ARGUMENT

### A. Legal Standard

#### 1. Intervention

Federal Rule of Civil Procedure 24 provides for intervention either as of right or with the permission of the court. A court "must permit anyone to intervene" who, "on timely motion," "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 948 (3d Cir. 2012); *Crum & Forster Specialty Ins. Co. v. Am. Diamond Builders, Inc.*, No. 2:20-cv-01608-JCS, 2020 WL 4437032, at *1 (E.D. Pa. July 31, 2020).

The right to intervene is permissive when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) provides the Court with broad discretion to allow intervention where a movant shows a "claim or defense that shares with the main action a common question of law or fact." *Consumer Fin. Prot.*

- 5 -

*Bureau v. Nat'l Collegiate Master Student Tr.*, No. 1:17-cv-01323-MN, 2018 WL 5095666, at *6 (D. Del. Oct. 19, 2018) (*quoting Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (describing permissive intervention as a "highly discretionary decision")).

A movant seeking to intervene as of right under Rule 24(a)(2) must satisfy the following requirements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Southland Gaming of the V.I. v. Gov't of the V.I.*, No. 3:18-cv-00107-RAM-RM, 2019 WL 2106569, at *1 (D.V.I. May 14, 2019) (*quoting Benjamin*, 701 F.3d at 948).

### 2. Stay of Proceeding

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-255. This power is therefore exercised at the court's discretion. *UCB, Inc. v. Hetero USA Inc.*, 277 F. Supp. 3d 687, 690 (D. Del. 2017). In determining whether a stay is appropriate, this Court has commonly considered three factors: "(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay." *City of New Castle v. Purdue Pharma L.P.*, No. 2:18-cv-01472-RK, 2018 WL 3438841, at *2 (E.D. Pa. July 16, 2018) (*quoting Cirulli v. Bausch & Lomb, Inc.*, No. 5:08-cv-04579-LS, 2009 WL 545572, at *2 (E.D. Pa. Mar. 4, 2009)); *Ciolli v. Iravani*, No. 2:08-cv-02601-LDD, 2008 WL 4412053, at *2 (E.D. Pa. Sept. 23, 2008); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 2:99-cv-04304-MMB, 2004 WL 1615307, at *7 (E.D. Pa. July 16, 2004); *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983).

**B.** **Intervention As A Matter of Right Under Rule 24(A) Is Warranted**

Under Rule 24(a)(2), a court "must permit anyone to intervene" who satisfies the Rule's requirements. That standard is met where: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Wallach v. Eaton Corp.*, 837 F.3d 356, 372 n.18 (3d Cir. 2016) (*quoting Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). Gallagher meets all of the criteria for intervention as of right.

**1.** **Gallagher's Motion to Intervene is Timely.**

Gallagher has filed his motion nearly two weeks before the purported September 8, 2020 Lead Plaintiff deadline that was improperly published in the E.D. Pa. PSLRA Notice, and just over one week after the filing of the Second Amended Complaint in the *Dalpoggetto* Action, which included the more recent disclosures pertaining to the fraud. On May 11, 2020, well before the *Brown* Action was filed, the Court in *Dalpoggetto* Action issued an order, in light of the developing revelations, to amend the complaint by August 14 2020, as the facts confirming Wirecard's fraud were being revealed. *Dalpoggetto* Action ECF. No. 78. Accordingly, Gallagher has timely moved to intervene upon recognizing his own interest in the *Brown* Action.

Gallagher's intervention will not result in undue delay, nor will there be prejudice to the parties in the *Brown* Action. The *Brown* Action remains in its nascent stages. No defendant has been served or has appeared in the action. Assuming *arguendo* that the E.D. Pa. PSLRA Notice properly set forth an operative Lead Plaintiff deadline—that purported deadline is set for September 8, 2020. Accordingly, any would-be lead plaintiff movants in the *Brown* Action have yet to undertake the time and expense associated with motion practice or amended pleadings. Moreover, all would-be lead plaintiffs have been put on notice of the *Dalpoggetto* Action by

virtue of multiple press releases. As an action governed by the PSLRA, the *Brown* Action is subject to a mandatory stay of discovery pending resolution of any motion(s) to dismiss, 15 U.S.C. §78u-4(a)(3)(B)(iv), and accordingly the parties have yet to incur any time and expense in connection with discovery either.

Granting Gallagher's motion and effecting transfer of the *Brown* Action to the Central District of California for consolidation with the *Dalpoggetto* Action would in fact ***avoid*** potential prejudice to the parties. First, Gallagher's motion would avoid prejudice to members of the putative class who might file Lead Plaintiff motions on September 8, 2020, by preventing them from undertaking motion practice or be erroneously appointed lead, which Gallagher respectfully submits is improper and ultimately meaningless due to the pendency of the *Dalpoggetto* Action. Second, Gallagher's motion would avoid prejudice to the Defendants, who would otherwise be forced to defend at least two different actions arising from the same alleged misconduct, in two different jurisdictions. *See City of New Castle*, 2018 WL 3438841, at *3 (stating "the possibility of a slight delay for the Plaintiffs is far outweighed by the possible prejudice faced by the Defendants if this case is not stayed . . . If this Court denies the stay, it would potentially subject Defendant[s] to the significant burden of duplicative litigation.") (*quoting Yearwood v. Johnson & Johnson, Inc.*, No. 1:12-cv-01374-RDB, 2012 WL 2520865, at *4 (D. Md. June 27, 2012)) (internal quotation omitted); *Royal v. Rochford*, No. 2:11-cv-07149-CCC, 2012 WL 259388, at *10 (D.N.J. Jan. 27, 2012) (terminating duplicative action asserting "identical factual predicates and legal challenges"); *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 1:07-cv-00178-GMS, 2008 WL 2520809, at *2 (D. Del. June 23, 2008) (denying motion to bifurcate proceedings due to risk of duplicative proceedings).

By contrast, if intervention is denied, Gallagher would be severely prejudiced by the filing and adjudication of PSLRA Lead Plaintiff motions in the *Brown* Action. Gallagher is the court-appointed Lead Plaintiff in the *Dalpoggetto* Action. Given the **complete** overlap between the class periods alleged in the *Brown* Action and the class period that Gallagher alleges as Lead Plaintiff in the *Dalpoggetto* Action, as well as the identical named defendants and substantively similar allegations, appointing a Lead Plaintiff in the E.D. Pa. Action would needlessly bifurcate the fraud claims against Wirecard into two competing actions, thereby prejudicing Gallagher's ability to represent in full the interest of the Wirecard investors on whose behalf he now serves as Lead Plaintiff and, ultimately, to vigorously prosecute one consolidated class action encompassing one class period.

Recognizing the prejudice to Lead Plaintiffs duly appointed pursuant to the PSLRA, as well as disruption to the orderly Lead Plaintiff process established by the PSLRA, district courts routinely reject efforts to "restart" the Lead Plaintiff appointment process by the filing of new complaints alleging nearly identical claims against the same defendants. *See*, *e.g.*, *Kabak v. Becton, Dickinson & Co.*, No. 2:20-cv-02155-SRC-CLW, 2020 WL 3056281, at *3 (D.N.J. June 9, 2020) (noting "the PSLRA's statutory scheme calling for the appointment of one lead plaintiff to exercise overall control of the litigation"); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, No. 1:09-md-02058-PKC, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("Permitting other plaintiffs to bring additional class actions now . . . would interfere with Lead Plaintiff's ability and authority"); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 1:12-md-02389-RWS-GWG, 2013 WL 4399215, at *4 (S.D.N.Y. Aug. 13, 2013) (rejecting separate class action as rendering "the PSLRA's lead plaintiff provisions meaningless"); Order, *In re UBS AG Sec. Litig.*, No. 1:07-cv-11225-RJS (S.D.N.Y. Apr. 7, 2009), ECF No. 97 (rejecting request to

- 9 -

maintain separate class action based on new disclosures and consolidating action under leadership of previously appointed lead plaintiff); Order, *In re Lehman Bros. Sec., & ERISA Litig.*, No. 1:09-md-02017-LAK-GWG (S.D.N.Y. Apr. 24, 2009), ECF No. 86 (rejecting argument to maintain separate action as "singularly unpersuasive").

      **2.**      **Gallagher Has a Significant Protectable Interest in the Subject of the *Brown* Action.**

For an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Brody v. Spang,* No. 2:90-cv-03871-HH, 1991 WL 24954, at *6 (E.D. Pa. Feb. 22, 1991). Rule 24(a)(2) does not require a property interest but rather "an interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a)(2).

Here, Gallagher has already been appointed lead plaintiff to a putative class that has a significant financial interest in the subject matter of the *Brown* Action and suffered substantial losses as a result of Wirecard's false and misleading statements concerning its accounting practices. *See generally, Dalpoggetto* Action ECF No. 82. Moreover, as alleged in the *Dalpoggetto* Action's Second Amended Complaint, Lead Plaintiff Gallagher, and the putative class, are investors who incurred significant losses as a result of Wirecard's false and misleading statements concerning its accounting practices, which is ***precisely*** the subject of the *Brown* Action. Accordingly, Gallagher has "demonstrate[d] an 'interest relating to the property or transaction which is the subject of the action.'") *Selective Way Ins. Co. v. Head*, No. 2:10-cv-07029MMB, 2011 WL 1459000, at *4 (E.D. Pa. Apr. 14, 2011). *See also, In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 314 (3d Cir. 2005) ("[i]n the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").

**3. Lead Plaintiff Gallagher's Interest Could Be Impaired by the Disposition of the *Brown* Action.**

The third prong of a Rule 24(a) inquiry merely asks whether an unfavorable disposition of the litigation may impair Gallagher's interests. Here, Gallagher need only demonstrate that a district court judgment might "practically disadvantage" him. *Pa. Truck Lines, Inc. v. Int'l Bhd. of Teamsters, etc.*, No. 2:88-cv-06968-JM, 1990 WL 59305, at *2 (E.D. Pa. May 4, 1990). *See also Evanston Ins. Co. v. Tristar Prods.*, No. 5:20-cv-01934-JFL, 2020 U.S. WL 4671443, at *3 (E.D. Pa. Aug. 11, 2020) ("Third, for reasons similar to those discussed with respect to the preceding factor—that is, assuming it has a significant interest in the subject matter of the instant suit—it almost certainly follows that [movant's] interests may be significantly impaired if it does not intervene.").

If Gallagher's motion for intervention and for the transfer of the *Brown* Action to the Central District of California for consolidation with the *Dalpoggetto* Action, is not granted, Gallagher's ability to pursue recovery of his losses, and those of the other class members, in connection with Wirecard's fraudulent conduct as alleged in the Related Actions, will be significantly impaired. As the Lead Plaintiff in the *Dalpoggetto* Action, Gallagher will be uniquely tasked with working closely with the attorneys handling the litigation to vigorously prosecute the action on behalf of the class. If the fraud claims against Wirecard remain improperly bifurcated into the *Dalpoggetto* Action and the *Brown* Action, Lead Plaintiff Gallagher's ability to pursue recovery on behalf of the class will be significantly hindered. *See, e.g., Bank of Am. Corp.*, 2010 WL 1438980, at *2 ("Permitting other plaintiffs to bring additional class actions now . . . would ***interfere with Lead Plaintiffs' ability and authority***") (emphasis added); *Amerimar Cherry Hill Assocs. Ltd. P'ship v. United States Fid. & Guar. Co.*, No. 2:90-cv-03354-RB, 1991 WL 137153, at *5 (E.D. Pa. July 22, 1991) ("Given that the disposition of

this action in [movant's] absence may leave any of the parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [movant's] claimed interest, [movant] has demonstrated a sufficient tangible threat to its interest.").

**4.** **Gallagher's Interest is Not Completely Protected by the Parties in the *Brown* Action.**

The last prong of a Rule 24(a) inquiry "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (*quoting Trbovich v. UMW*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 636 (1972); *Crum & Forster*, 2020 WL 4437032, at *3.

Here, for the reasons explained above, it is self-evident that neither the plaintiff in the *Brown* Action nor any lead plaintiffs ultimately appointed therein will adequately protect Gallagher's interests. Indeed, as discussed, the very fact of the pendency of the *Brown* Action, and the appointment of any Lead Plaintiff therein, are antithetical to Gallagher's interests as the current Lead Plaintiff in the *Dalpoggetto* Action, and absent Gallagher's intervention in the *Brown* Action, those interests will not and cannot be protected. This more than satisfies the minimal showing required by Rule 24(a).

**C.** **In The Alternative, Permissive Intervention Under Rule 24(B) Is Warranted**

Alternatively, under Rule 24(b)(1)(B), "[o]n timely motion," the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." *Evanston Ins.*, 2020 WL 4671443, at *2.

Courts have considered three factors in deciding whether to allow permissive intervention: (1) 'timely application'; (2) 'a question of law or fact in common' between the 'applicant's claim or defense and the main action'; (3) a determination that the intervention will

- 12 -

not 'unduly delay or prejudice the adjudication of the rights of the original parties.' *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, No. 3:16-cv-02470-JEJ, 2017 WL 2118285, at \*2 (M.D. Pa. May 16, 2017) (*quoting United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980)).

As discussed *supra*, Gallagher's motion to intervene is made early in the litigation and is thus timely. *Audi of Am., Inc.*, 2017 WL 2118285, at \*2. Most significantly, Gallagher's intervention will not result in undue delay or prejudice to the original parties. The *Brown* Action is in its early stages. By granting Gallagher's motion for intervention, staying the purported Lead Plaintiff selection process, and transferring these actions to the Central District of California for consolidation with the *Dalpoggetto* Action, the Court will obviate the need for a duplicative and improper lead plaintiff motion process, thus sparing potential litigants significant, ultimately fruitless work in connection with the filing and briefing of Lead Plaintiff motions.

Gallagher's claims are essentially identical to those in the complaints in the *Brown* Action, which share common questions of law and fact with the *Dalpoggetto* Action. These include *inter alia*: (1) whether the defendants in these actions violated the Exchange Act; (2) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Wirecard; and (3) whether the trading price of Wirecard's securities was artificially inflated. *See*, *e.g.*, *Dalpoggetto* Action, ECF No. 82 at ¶ 235; *Brown* Action, ECF No. 1 at ¶ 80.

If intervention is denied, however, Gallagher will be prejudiced for the reasons set forth at length *supra* at Section III.B.1.—namely, his "ability and authority" to act as Lead Plaintiff for the class in the *Dalpoggetto* Action will be significantly compromised, to the detriment of Gallagher and all members of the investor class. *Kabak*, 2020 WL 3056281, at 3.

**D. A Stay Of The Lead Plaintiff Selection Process In The *Brown* Action Is Warranted Pending Resolution Of Gallagher's Motion To Intervene**

In determining whether to grant a stay, courts in this District ordinarily consider the following three factors: "(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay." *City of New Castle*, 2018 WL 3438841, at *2 (*quoting Cirulli*, 2009 WL 545572, at *2)). Here, Gallagher respectfully submits that on balance, the foregoing factors weigh heavily in favor of the requested stay.

**1. The Promotion of Judicial Economy.**

Granting the requested stay will not prejudice the Court, nor any other federal courts. Again, Gallagher seeks to stay these proceedings only for a limited time—*i.e.*, during the pendency of his motion to intervene and motion to transfer the *Brown* Action to the Central District of California for consolidation with the *Dalpoggetto* Action—which will ultimately have little impact on the overall duration of these litigations, and thus little impact on the Court's efficient disposition of the *Brown* Action "with economy of time and effort for itself". *Landis*, 299 U.S. at 254. Considering the purposes for which the stay is sought, Gallagher respectfully submits that such a minimal delay in these proceedings will ultimately yield significant benefits with respect to judicial efficiency, by providing the opportunity for the ultimate adjudication of the Related Actions in one consolidated action, rather than piecemeal in two jurisdictions. *See Finn v. Barney*, No. 1:08-cv-02975-LTS, 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) ("Denial of the stay application would essentially require the Court to maintain duplicative proceedings, each having a different schedule and potentially doubling the amount of time and energy the Court must expend on these issues.").

- 14 -

## 2.    Balance of Harm to the Parties

### a.    The Interests of the Plaintiffs

Granting the requested stay will not unduly prejudice the interests of the plaintiffs in the *Brown* Action in proceeding expeditiously with this litigation. As discussed, the *Brown* Action is governed by the PSLRA. As such, assuming *arguendo* that the *Brown* Action continues to proceed separately from the *Dalpoggetto* Action, the cases would in any event not meaningfully proceed until after the Court has adjudicated competing Lead Plaintiff motions – currently due on September 8, 2020 – and appointed a Lead Plaintiff. Accordingly, there is no guarantee that the plaintiff in the *Brown* Action will ultimately have responsibility for prosecuting these cases.

Currently, the *Dalpoggetto* Action has been proceeding for 1.5 years, and most of the Defendants, generally domiciled in Germany, have been served pursuant to the lengthy Hague Service Convention. At this point, it appears that no defendant has been served or appeared in the *Brown* Action, and the case remains in its earliest stages. Moreover, it is customary in PSLRA actions that the Lead Plaintiff be granted an interval of time following appointment to prepare and file a consolidated amended complaint. *See*, *e.g.*, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 31.4 (2004) ("Immediately after assignment of the litigation, the judge should consider entering an order suspending the time for all defendants to respond to the complaint in cases where a motion to consolidate is pending or a lead plaintiff has not been selected, as the initial complaint is likely to be amended."). In addition, the PSLRA imposes a mandatory stay of discovery pending resolution of any motion to dismiss. 15 U.S.C. §78u-4(a)(3)(B)(iv). *See also In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006) (granting stay in PSLRA action, finding no prejudice in light of already existing PSLRA discovery stay); *Dipple v. Odell*, 870 F. Supp. 2d 386, 392 (E.D. Pa. 2012) ("Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice [that] is neither

improper nor unfair."). For the foregoing reasons, among others, the *Brown* Action remains in its earliest stages, and staying the *Brown* Action pending resolution of his motion to intervene and motion to transfer will not have a meaningful impact on the duration of this litigation.

Failing to stay the Lead Plaintiff selection process in the *Brown* Action will in fact prejudice the interests of the Lead Plaintiff in the Related Action, as well as the absent class members. Unless and until the *Brown* Action is transferred to the Central District of California and consolidated with the *Dalpoggetto* Action, neither of the Related Actions will be able to proceed in a meaningful, organized, and expeditious manner, to the prejudice of all named plaintiffs and class members.

### b. The Interests of the Defendants

Likewise, granting the requested stay will not prejudice the interests of the defendants. For all of the reasons discussed *supra*, granting the requested stay for the limited purpose sought will ultimately have minimal impact on the overall duration of this litigation. Nor is Gallagher aware of any other reason why granting the stay might prejudice defendants. On the contrary, granting the stay and transferring the *Brown* Action to the Central District of California is likely to ultimately **benefit** defendants, by potentially obviating their need to defend duplicative lawsuits in different jurisdictions. *See City of New Castle,* 2018 WL 3438841, at *3 ("the possibility of a slight delay for the Plaintiffs is far outweighed by the possible prejudice faced by the Defendants if this case is not stayed . . . If this Court denies the stay, it would potentially subject Defendant[s] to the significant burden of duplicative litigation.") (internal citation omitted); *Royal*, 2012 WL 259388, at *10 (terminating duplicative action asserting "identical factual predicates and legal challenges"); *Deutscher Tennis Bund*, 2008 WL 2520809, at *2 (denying motion to bifurcate proceedings due to risk of duplicative proceedings); *Royal Park Investments SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 372 (S.D.N.Y. 2013) ("the risk of

hardship to [defendant] of engaging in duplicative motion practice and discovery proceedings outweighs any prejudice that could potentially inure to [plaintiff]") (quoti*ng North v. Merck & Co*., No. 6:05-cv-06475-DGL-JWF, 2005 WL 2921638, at \*2 (W.D.N.Y. Nov. 4, 2005); *Maritima De Ecologia, S.A. de C.V. v. Sealion Shipping Ltd*., No. 1:10-cv-08134-KBF, 2011 WL 1465744, at \*5 (S.D.N.Y. Apr. 15, 2011) (duplicative litigation prejudicial to both parties); *Finn*, 2008 WL 5215699, at \*3, *id.* (finding duplicative discovery burdens to be prejudicial, and that "[c]onsiderations of judicial economy and efficiency weigh against allowing Plaintiff to proceed with this matter at this stage.").

c.     **The Interests of Non-Parties**

Granting the requested stay will not prejudice non-parties to this litigation. The non-parties with the greatest interest in the *Brown* Action are absent members of the putative class—*i.e.*, investors who purchased Wirecard securities between August 17, 2015 through June 26, 2020. Granting the requested stay will not prejudice those investors, but rather provide an opportunity to clarify potential confusion to those investors, created by the filing of the *Brown* Action and the publication of the E.D. Pa. PSLRA Notice, which improperly advised investors in Wirecard securities that they have until September 8, 2020 to seek appointment as Lead Plaintiff in the *Brown* Action—notwithstanding the fact that the deadline to seek appointment in the *Dalpoggetto* Action elapsed on April 9, 2019. *Dalpoggetto* Action ECF No. 14-1. Staying this purported lead plaintiff selection process and transferring the *Brown* Action to the Central District of California for consolidation with the *Dalpoggetto* Action will prevent Wirecard investors from unnecessarily undertaking the time and expense of retaining counsel and seeking appointment as Lead Plaintiff in the *Brown* Action if those actions are subsequently transferred and consolidated with the *Dalpoggetto* Action. By contrast, should the Court decline to grant the requested stay and opt instead to adjudicate Gallagher's motion to intervene and motion to

- 17 -

transfer *after* the Lead Plaintiff selection process, it is likely that one or more Wirecard investors not presently before the Court will file motions seeking Lead Plaintiff appointment, or become appointed, only for those motions to be rendered legal nullities should the *Brown* Action ultimately be transferred and consolidated with the *Dalpoggetto* Action.

### 3. The Duration of the Requested Stay

Gallagher seeks to stay these proceedings during the pendency of his motion to intervene and motion to transfer the *Brown* Action to the Central District of California for consolidation with the *Dalpoggetto* Action. The requested stay is very limited and will ultimately have little impact on the overall duration of these litigations. In addition, as discussed above, lead plaintiffs in PSLRA actions are customarily granted an interval of time following appointment to prepare and file a consolidated amended complaint, and the PSLRA further imposes a mandatory stay of discovery pending resolution of any motion to dismiss. 15 U.S.C. §78u-4(a)(3)(B)(iv). Accordingly, the duration of the requested stay will have little or no impact on the progression of this matter.

### E. This Court Should Transfer This Action

### 1. Transfer Is Appropriate Under The First-Filed Rule.

The first-filed rule exists because "[t]he economic waste involved in duplicating litigation is obvious"—as is "its adverse effect upon the prompt and efficient administration of justice." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). Accordingly, "[c]ourts already heavily burdened with litigation . . . should . . . not be called upon to duplicate each other's work." *Id.* Instead, they possess wide discretion to transfer a duplicative second-filed action to the forum where the first-filed action is pending, and flexibility to do so even when the actions are not "mirror image cases where the parties and the issues perfectly align." *Panitch v. Quaker Oaks Co.*, No. 2:16-cv-04586-PD, 2017 WL 1333285, at *2 (E.D. Pa. Apr. 5, 2017)

(citations omitted) (ordering transfer of duplicative class-action under first-filed rule and § 1404(a)).

The present lawsuit overlaps to an enormous extent with that in the *Dalpoggetto* Action, which the parties have been vigorously litigating for 1.5 years in front of a judge who has become deeply familiar with the case's subject matter. *See generally*, Docket, *Dalpoggetto* Action. Requiring the parties to litigate the same issues in this Court would require an enormous duplication of effort, precisely the problem that the first-filed rule seeks to avoid. This case calls for a textbook application of the first-filed rule, and none of the rare exceptions to the rule applies.

### a.      The *Dalpoggetto* Action Is The First-Filed Action.

The *Dalpoggetto* Action was initially filed on February 8, 2019 and is the first securities lawsuit against Wirecard and its officers. The *Brown* Action complaint in this case was filed nearly one and a half years later, on July 7, 2020. As discussed above, the *Dalpoggetto* Action underwent the PSLRA lead-plaintiff appointment process, and most of the defendants, who are domiciled abroad, have been served pursuant to the Hague Service Convention. There can be no question that the *Dalpoggetto* Action is the first-filed action for purposes of the first-filed rule.

### b.      The *Dalpoggetto* Action Encompasses The Same Subject Matter As The Present Case.

The first-filed *Dalpoggetto* Action also encompasses the "subject matter" of this lawsuit. Both actions allege claims against Wirecard, its officers and employees, and E&Y for alleged violations of the federal securities laws. Both are putative class actions, and the core allegations in both cases center on Defendants' multi-billion dollar accounting fraud scheme and Defendants' false and misleading statements directed at investors and designed to conceal the fraud. Each of the cases center on whether Defendants made actionable misrepresentations and

omissions regarding such matters. Wirecard AG is named as a defendant in both actions, and the claims in the two lawsuits also have virtually complete overlap. Both cases currently involve claims for alleged violations of Sections 10(b) and 20(a) of the Exchange Act.

In short, the legal and factual issues in this case are "substantially identical" to the legal and factual issues in the *Dalpoggetto* Action, and "the judicial efficiency rationale undergirding the first-filed rule" would be best served through transfer. *Panitch*, 2017 WL 1333285, at *4 (citation omitted). Accordingly, this duplicative litigation against Wirecard and its officers should be transferred to the Central District of California under the first-filed rule.

### c. No Exceptional Circumstances Weigh Against Transfer.

While there are certain exceptions to the first-filed rule, they are "rare" and do not apply in this case. *EEOC v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988). "[I]nvocation of the rule will usually be the norm," and only "exceptional circumstances" justify departing from the rule. *EEOC*, 850 F.2d at 979. Such exceptional circumstances would arise in cases of "[b]ad faith" or "forum shopping," "when the second-filed action ha[s] developed further than the initial suit," or "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Id.* at 976. Nothing like that is present here.

Nor is there any argument that this action has developed further than the *Dalpoggetto* Action. The *Dalpoggetto* Action has been proceeding steadily for 1.5 years – in the Central District of California before Judge Olguin – and there have been over 80 filings. That is more than enough progress to support transfer, especially given how much less has happened in the *Brown* Action.

Because the *Dalpoggetto* Action was the first-filed case involving the present subject matter and no exception to the first-filed rule applies, this case should be transferred to the Central District of California.

**2.      Alternatively, Transfer Is Appropriate Under Section 1404(A).**

Even if transfer were not warranted under the first-filed doctrine – and it is – it would be warranted under 28 U.S.C. § 1404(a). That statute states, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Though "each case must turn on its particular facts" and requires courts to balance multiple factors, the statute's overarching purpose is "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Panitch*, 2017 WL 1333285, at *3 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). Permitting these actions to remain in this Court would run counter to Section 1404(a) and its purposes.

"The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district." *Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605, 608 (E.D. Pa. 2018) (quoting *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001)). Under the federal securities laws, the venue provision for defendants not resident in the United States, and the procedural history of this matter itself, there is no question that these cases could have been brought either here or in the Central District of California. *See* 15 U.S.C. § 78aa(a); 28 U.S.C. § 1391(c)(3). The only question under Section 1404(a) is whether transfer is appropriate in light of public and private interests identified by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

Under *Jumara*, relevant "[p]ublic interests include: the 'enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and, familiarity of the trial judge with the

applicable state law in diversity cases.'" *Kershner*, 305 F. Supp. 3d at 611 (citation omitted). In addition, "[p]rivate interests include: 'plaintiff's choice of venue; defendant's preference; where the claim arose; convenience of the witnesses to the extent they might be unavailable for trial in one of the fora; and, the extent to which records or other documentary evidence would be available for production.'" *Id.* (citation omitted).

The *Jumara* factors readily point toward transfer. In fact, "the presence of a related action in the transferee forum" – here, the *Dalpoggetto* Action – "is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No.2:09-cv-02552-HB, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009); *see also Goggins v. All. Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) ("Concerns over judicial efficiency outweigh all other factors in this case, and are dispositive of the issue.").

Here, however, the other *Jumara* factors do *not* weigh against, but rather favor transfer. Although the plaintiff's choice of forum is often due significant weight, "where Plaintiff chooses a forum other than her state of residence, her choice is given less weight." *Weber*, 155 F. Supp. 2d at 285. That is the situation here, since there is no indication that Plaintiff is a resident of Pennsylvania. "Therefore, Plaintiff's only contact within this jurisdiction appears to be through her attorney's office and as the convenience of the litigating attorneys should not be considered in evaluating transfer of venue, this fact does not weigh in favor of preserving her choice of venue." *Weber*, 155 F. Supp. 2d at 285. Moreover, it would be extremely expensive for Wirecard to litigate the same claims in two separate districts, which could "lead to duplication of voluminous discovery and documentary evidence, the burden of which would fall almost entirely on the company" and the individual Defendants. *Panitch*, 2017 WL 1333285, at *7.

Apart from the parties' preferences and convenience, the remaining *Jumara* factors also favor transfer on balance. "The public is obviously well-served by avoiding duplicative litigation," and, indeed, "'a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Panitch*, 2017 WL 1333285, at *7 (quoting *Cont'l Grain*, 364 U.S. at 26).

Considerations of court congestion cannot possibly favor requiring *two* courts to oversee the progress of these large cases, nor does this federal securities case involving a Germany-based company qualify as a "local controversy" that should be decided in Pennsylvania. *Panitch*, 2017 WL 1333285, at *8. In sum, the balance of private and public *Jumara* factors weigh in favor of transfer under § 1404(a).

### 3. This Court Should Not Appoint A Lead Plaintiff Before Transferring The Case.

"The PSLRA cautions against appointment of a lead plaintiff when consolidation is possible." *Grodko v. Teva Pharm. Indus.*, No. 2:17-cv-03743-PD, 2018 WL 10847659, at *7 (E.D. Pa. Apr. 10, 2018) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). As a general rule, questions of lead plaintiff status should be resolved by the transferee court, rather than the transferor court, because the transferee court is the one that will ultimately preside over the action. *See, e.g., Gallagher v. Ocular Therapeutix, Inc.*, No. 2:17-cv-05011-SDW-LDW, 2017 WL 4882488, at *2 (D.N.J. Oct. 27, 2017) ("[T]he selection of a lead plaintiff [is] a decision that is more appropriately made by the court that ultimately will preside over the litigation."). If this Court were to appoint a lead plaintiff here, that could significantly interfere with Judge Olguin's management of the C.D. Cal. action. *See id.* ("[T]he selection of a lead plaintiff may have a significant effect on the conduct of the litigation.").

- 23 -

The PSLRA mandates a process to which a court must adhere in appointing a lead plaintiff in a private securities class action. *See* 15 U.S.C. § 78u-4(a)(3)(B). In the *Dalpoggetto* Action, Judge Olguin has already implemented that process and appointed Gallagher as lead plaintiff. *Dalpoggetto* Action, ECF No. 25. If the *Brown* Action plaintiff has valid arguments to support her bid to be named lead plaintiff in the *Dalpoggetto* Action – in the event this case is transferred – those arguments are properly advanced in, and resolved by, the transferee court.

Gallagher respectfully submits that this Court should rule first on the instant transfer motion, and should address the lead plaintiff issue only if it denies this motion.

### IV. CONCLUSION

For the foregoing reasons, Gallagher respectfully requests that the Court: (i) grant his motion to intervene in the *Brown* Action; (ii) enter an order staying the Lead Plaintiff selection process in the *Brown* Action pending resolution of Gallagher's motion to intervene and (iii) transfer the *Brown* Action to the Central District of California.

Respectfully submitted,

**DATED:** August 27, 2020

**SPECTOR ROSEMAN & KODROFF, P.C.**

By: */s/ Jeffrey L. Kodroff*
Jeffrey L. Kodroff (55780)
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
jkodroff@srkattorneys.com

*Liaison Counsel for C.D. Cal. Lead Plaintiff Lawrence Gallagher*

Reed R. Kathrein
Danielle Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Lead Counsel for C.D. Cal. Lead Plaintiff
Lawrence Gallagher*

# EXHIBIT A

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BROWN, Individually and On Behalf Of All Others Similarly Situated<br><br>**Plaintiff,**<br><br>   v.<br><br>WIRECARD AG, MARKUS BRAUN, JAN MARSALEK, BURKHARD LEY, ALEXANDER VON KNOOP, SUSANNE STEIDL, WULF MATTHIAS, and ERNST & YOUNG GMBH WIRTSCHAFTSPRUEFUNGSGESELLSC HAFT,<br><br>**Defendants.** | **No. 2:20-cv-03326-AB**<br><br>**CLASS ACTION** |

**DECLARATION OF DANIELLE SMITH IN SUPPORT OF
MOTION OF LAWRENCE GALLAGHER FOR:
(1) INTERVENTION PURSUANT TO FED. R. CIV. P. 24;
(2) STAY OF PSLRA LEAD PLAINTIFF SELECTION PROCESS; AND
(3) TRANSFER OF VENUE**

I, Danielle Smith, declare as follows:

1.  I am an attorney at the law firm Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), counsel for Lawrence Gallagher ("Mr. Gallagher" or "Movant"). I am an attorney licensed to practice law in the State of California. I make this declaration in support of Mr. Gallagher's motion for: (1) Intervention Pursuant To Fed. R. Civ. P. 24; (2) Stay of the PSLRA Lead Plaintiff Selection Process; and (3) Transfer of the Brown Action to the U.S. District Court for the Central District of California for consolidation with *Mark Dalpoggetto v. Wirecard AG, et al.*, No. 2:19-cv-00986-FMO-SK.

2.  Attached hereto are true and correct copies of the following documents:

**Exhibit A**: Class Action Complaint For Violation Of The Federal Securities Laws in *Dalpoggetto v. Wirecard AG, et al.*, Case No. 2:19-cv-00986, filed on February 8, 2019; and

**Exhibit B**: Order Granting The Motion Of Lawrence Gallagher For Appointment As Lead Plaintiff, And Approval Of His Selection Of Lead Counsel in *Dalpoggetto v. Wirecard AG, et al.*, Case No. 2:19-cv-00986, filed on May 6, 2019.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 27th day of August, 2020 at Berkeley, California.

**DATED:** August 27, 2020

_/s/ Danielle Smith_____
DANIELLE SMITH

010821-11/1336924 V1

# Exhibit A

Case 2:19-cv-00986 Document 1 Filed 02/08/19 Page 41 of 65 Page ID #:1

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DALPOGGETTO, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WIRECARD AG, MARKUS BRAUN, BURKHARD LEY, ALEXANDER VON KNOOP, JAN MARSALEK, and SUSANNE STEIDL,<br><br>    Defendants. | Case No. 2:19-cv-00986<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Mark DalPoggetto ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings,

– 1 –
CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

wire and press releases published by and regarding Wirecard AG ("Wirecard" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Wirecard from April 7, 2016 through February 1, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company's business has an effect in this District, and the alleged misstatements entered, and subsequent damages occurred, in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail,

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Wirecard, a technology company, purports to provide outsourcing and white label solutions for electronic payment transactions worldwide. The Company is headquartered in Aschheim, Germany. Wirecard securities trade OTC under the ticker symbols "WCAGY" and "WRCDF."

8. Defendant Markus Braun ("Braun") has served as the Company's Chief Executive Officer ("CEO") since 2002. Braun is a member of the Company's Management Board.

9. Defendant Burkhard Ley ("Ley") served as the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until December 31, 2017. Ley served as a member of the Company's Management Board.

10. Defendant Alexander von Knoop ("Knoop") has served as the Company's CFO since January 1, 2018. Knoop is a member of the Company's Management Board.

11. Defendant Jan Marsalek ("Marsalek") has served as the Company's Chief Operating Officer ("COO") and a member of the Company's Management Board since February 2010.

12. Defendant Susanne Steidl ("Steidl") serves on the Company's Management Board and as Chief Product Officer ("CPO"), effective January 1, 2018.

13. Defendants Braun, Ley, Knoop, Marsalek, and Steidl are herein referred to as "Individual Defendants."

14. Each of the Individual Defendants:

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

15.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.    On April 7, 2016, the Company issued a press release containing a web link to its financial results for the fiscal year ended December 31, 2015 (the "2015

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Case 2:19-cv-00986 Document 1 Filed 02/05/19 Page 5 of 169 Page ID #:5

Annual Report"). The 2015 Annual Report was signed by Defendants Braun, Ley and Marsalek. The 2015 Annual Report contained signed statements by Defendants Braun, Ley and Marsalek attesting to the accuracy of financial reporting and a fair review of the development and performance of the business, as well as the attendant opportunities and risks.

19.     The 2015 Annual Report stated the Company had a thorough process in place to ensure employees would not misuse (i.e., falsify) information. The 2015 Annual Report stated, in relevant part:

> In addition, the Wirecard Group counteracts internal misuse through a closed concept, starting with the selection of employees and a stringent "need-to-know" principle, through to the monitoring of all data access events. In close cooperation with the Wirecard Group's Data Protection Officer, experts ensure that personal data is processed solely in accordance with the rules and regulations of the applicable data protection laws.

20.     Wirecard's 2015 Annual Report stated the Company had systems in place to "guarantee" the correct accounting of business processes and transactions and to "ensure[] compliance" with accounting regulations and statutory standards. The 2015 Annual Report stated, in relevant part:

> **2.4 Internal control and risk management system relating to the Group financial accounting process**
>
> The Wirecard Group has an internal control and risk management system relating to the (Group) accounting process, in which suitable structures and processes are defined and then implemented within the organisation. This is designed to guarantee the timely, uniform and correct accounting of all business processes and transactions. It ensures compliance with statutory standards, accounting regulations and the internal Group accounting directive, which is binding for all companies included in the consolidated financial statements.

21.     On April 6, 2017, the Company issued a press release containing a web link to its financial results for the fiscal year ended December 31, 2016 (the "2016

– 5 –

Annual Report"). The 2016 Annual Report was signed by Defendants Braun, Ley and Marsalek. The 2016 Annual Report contained signed statements by Defendants Braun, Ley and Marsalek attesting to the accuracy of financial reporting and a fair review of the development and performance of the business, as well as the attendant opportunities and risks.

22.    The 2016 Annual Report stated the Company had a thorough process in place to ensure employees would not misuse (i.e., falsify) information. The 2016 Annual Report stated, in relevant part:

> In addition, the Wirecard Group counteracts internal misuse through a closed concept, starting with the selection of employees and a stringent "need-to-know" principle, through to the monitoring of all data access events. In close cooperation with the Wirecard Group's Data Protection Officer, experts ensure that personal data is processed solely in accordance with the rules and regulations of the applicable data protection laws.

23.    Wirecard's 2016 Annual Report stated the Company had systems in place to "guarantee" the correct accounting of business processes and transactions and to "ensure[] compliance" with accounting regulations and statutory standards. The 2016 Annual Report stated, in relevant part:

> **2.4 Internal control and risk management system relating to the Group financial accounting process**
>
> The Wirecard Group has an internal control and risk management system relating to the (Group) accounting process, in which appropriate structures and processes are defined and then implemented within the organisation. This is designed to guarantee the timely, uniform and correct accounting of business processes and transactions. It ensures compliance with statutory standards, accounting regulations and the internal Group accounting directive, which is binding for all companies included in the consolidated financial statements.

24.    On April 12, 2018, the Company issued a press release containing a web link to its financial results for the fiscal year ended December 31, 2017 (the

– 6 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

"2017 Annual Report"). The 2017 Annual Report was signed by Defendants Braun, Knoop, Marsalek, and Steidl. The 2017 Annual Report contained signed statements by Defendants Braun, Ley, Marsalek, and Steidl attesting to the accuracy of financial reporting and a fair review of the development and performance of the business, as well as the attendant opportunities and risks.

25.     The 2017 Annual Report stated the Company had a thorough process in place to ensure employees would not misuse (i.e., falsify) information. The 2017 Annual Report stated, in relevant part:

> In addition, the Wirecard Group counteracts internal misuse through a closed concept, starting with the selection of employees and a stringent "need-to-know" principle, through to the monitoring of all data access events. In close cooperation with the Wirecard Group's Data Protection Officer, experts ensure that personal data is processed solely in accordance with the rules and regulations of the applicable data protection laws.

26.     Wirecard's 2017 Annual Report stated the Company had systems in place to "guarantee" the correct accounting of business processes and transactions and to "ensure[] compliance" with accounting regulations and statutory standards. The 2017 Annual Report stated, in relevant part:

> **2.4 Internal control and risk management system relating to the Group financial accounting process**
>
> The Wirecard Group has an internal control and risk management system also in relation to the (Group) accounting process, in which appropriate structures and processes are defined and then implemented within the organization. This is designed to guarantee the timely, uniform and correct accounting of business processes and transactions. It ensures compliance with statutory standards, accounting regulations and the internal Group accounting directive, which is binding for all companies included in the consolidated financial statements.

27.     The statements referenced in ¶¶18-26 above were materially false and/or misleading because they misinterpreted and failed to disclose the following

– 7 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Case 2:19-cv-00986 Document 1 Filed 02/08/19 Page 8 of 16 Page ID #:8

adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) for the period spanning from 2015 to 2018, a senior Wirecard executive in Singapore had been accused of forging and backdating contracts, including falsifying accounts and money laundering; (2) an external law firm commissioned to investigate Wirecard's Singapore office had reportedly found evidence of "serious offences of forgery and/or of falsification of accounts"; (3) Wirecard had downplayed weaknesses in its internal controls over financial reporting and failed to disclose the true extent of those weaknesses; and (4) as a result, Defendants' statements about Wirecard's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Begins to Emerge

28. On January 30, 2019, *The Financial Times* reported that "[a] senior Wirecard executive was last year suspected of using forged and backdated contracts in a string of suspicious transactions[.]" According to the article, an internal presentation "outlined potential violations of Singapore law, including 'falsification of accounts' and 'money laundering.'" Further, "[t]he whistleblower who briefed the FT on the document was motivated to do so, the person said, out of a concern that no action appeared to have been taken over potentially criminal acts inside a company presenting itself as a blue-chip financial institution."

29. On this news, shares of WCAGY fell $8.54 per share or nearly 9% to close at $86.66 per share on January 30, 2019. Shares of WRCDF fell $28.10 per share or nearly 15% to close at $161.90 per share on January 30, 2019.

30. On February 1, 2019, *The Financial Times* reported that "[a]n external law firm commissioned by Wirecard to investigate the payment company's Singapore office found evidence indicating 'serious offences of forgery and/or of falsification of accounts', according to a preliminary report on the inquiry seen by

– 8 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the Financial Times." According to the article, the lawyers' report stated the following:

> On the face of the evidence uncovered so far, these acts appear to bear out at the very least serious offences of forgery and/or of falsification of accounts/documents under section 477A of Singapore's Penal Code. As these acts were intentional, there are reasons to suspect that they may have been carried out to conceal other misdeeds, such as cheating, criminal breach of trust, corruption and/or money laundering.

31. On this news, shares of WCAGY fell $16.60 per share or nearly 20% to close at $66.64 per share on February 1, 2019. Shares of WRCDF fell $30.17 per share or over 18% to close at $133.88 per share on February 1, 2019.

32. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Wirecard during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from

– 9 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded OTC, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

– 11 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Case 2:19-cv-00986-SPAR Document 1 Filed 02/08/19 Page 12 of 15 Page ID #:12

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

46. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

47. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

48. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in

– 13 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

49. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

50. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

54. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

56. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 8, 2019                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Wirecard AG. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Wirecard AG. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: Mark
Middle Initial:
Last name: DalPoggetto
Address:
City:
State:
Zip:
Country:
Facsimile:
Phone:
Email:

REDACTED

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 08/29/2018 | 154 | 112.2100 |

7. I have not served as a representative party on behalf of a class under the federal securities laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:      **YES**

**Certification for Mark DalPoggetto (cont.)**

By clicking on the button below, I intend to sign and execute this agreement and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis.　　　**YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 02/07/2019

# Exhibit B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DALPOGGETTO, Individually and On Behalf Of All Other Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>WIRECARD AG, MARKUS BRAUN, BURKHARD LEY, ALEXANDER VON KNOOP, JAN MARSALEK, and SUSANNE STEIDL,<br>Defendants. | No. 2:19-cv-00986-FMO-SK<br><br>**ORDER GRANTING THE MOTION [16] OF LAWRENCE GALLAGHER FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL**<br><br>Date: May 9. 2019<br>Time: 10:00 AM<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin |

1115145 V1

The court is in receipt of the motion of Lawrence Gallagher for entry of an Order: (1) appointing Lawrence Gallagher ("Movant") as lead plaintiff in this action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq*., and (2) approving Movant's selection of the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as lead counsel. The court further notes that no opposition to the motion has been filed. (See, generally, Dkt.). With good cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Court hereby appoints Lawrence Gallagher as Lead Plaintiff in this action. Lawrence Gallagher satisfies the requirements for lead plaintiff appointment under the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act;

2. Lead Plaintiff has selected and retained Hagens Berman Sobol Shapiro LLP as Lead Counsel, and the Court approves those selections;

3. Lead Counsel shall have authority to speak for the Plaintiffs in matters regarding pretrial and trial procedure and settlement negotiations, and shall make all work assignments in such manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

8. Lead Counsel shall have the following responsibilities and duties:

    a.    to coordinate the briefing and argument of motions;

    b.    to coordinate the conduct of discovery proceedings;

    c.    to coordinate the examination of witnesses in depositions;

ORDER GRANTING MOTION        - 1
Case No.: 2:19-cv-00986-FMO-SK

> d.   to coordinate the selection of counsel to act as a spokesperson at pretrial conferences;
>
> e.   to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;
>
> f.   to coordinate all settlement negotiations with counsel for defendants;
>
> g.   to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and
>
> h.   to supervise any other matters concerning the prosecution, resolution or settlement of this action.

4.   No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs.  No settlement negotiations shall be conducted without the approval of Lead Counsel. Defendants' counsel may rely upon all agreements made with Lead Counsel or other duly-authorized representatives of Plaintiffs, and such agreements shall be binding on Plaintiffs;

10.   Counsel in any related action that is consolidated with this action shall be bound by this selection of Lead Counsel;

11.   Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices; and

ORDER GRANTING MOTION                                                                       - 2 -
Case No.: 2:19-cv-00986-FMO-SK

12. Defendants may effect service of papers on plaintiffs by filing such papers with the Court's CM/ECF system.

IT IS SO ORDERED.

DATED: May 6, 2019

                                        /s/
                         _____
                         HON. FERNANDO M. OLGUIN
                         UNITED STATES DISTRICT JUDGE

DATED:  April 10, 2019

Respectfully submitted,

*/s/ Reed R. Kathrein*
_____
Reed R. Kathrein (139304)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOLS SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Attorneys for Proposed Lead Plaintiff*
*Lawrence Gallagher*

ORDER GRANTING MOTION                                        - 3
Case No.: 2:19-cv-00986-FMO-SK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. BROWN, Individually and On Behalf Of All Others Similarly Situated<br><br>**Plaintiff,**<br><br>v.<br><br>WIRECARD AG, MARKUS BRAUN, JAN MARSALEK, BURKHARD LEY, ALEXANDER VON KNOOP, SUSANNE STEIDL, WULF MATTHIAS, and ERNST & YOUNG GMBH WIRTSCHAFTSPRUEFUNGSGESELLSC HAFT,<br><br>**Defendants.** | **No. 2:20-cv-03326-AB**<br><br><u>**CLASS ACTION**</u> |

**[PROPOSED] ORDER GRANTING MOTION OF LAWRENCE GALLAGHER FOR:**
**(1) INTERVENTION PURSUANT TO FED. R. CIV. P. 24;**
**(2) STAY OF PSLRA LEAD PLAINTIFF SELECTION PROCESS; AND**
**(3) TRANSFER OF VENUE**

010821-11/1336923 V1

This matter comes before the Court on the Application of Lawrence Gallagher ("Lead Plaintiff") for an Order: (i) pursuant to Fed. R. Civ. P. 24, to intervene in the above-captioned action; (ii) to stay the Lead Plaintiff selection process in the instant action, imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), pending resolution of Gallagher's motion to intervene and transfer; and (iii) to transfer this action to the U.S. District Court for the Central District of California for consolidation with *Mark Dalpoggetto v. Wirecard AG*, et al., 2:19-cv-00986-FMO-SK.

Having reviewed the materials submitted and being fully advised, the Court hereby orders as follows:

1. Lawrence Gallagher's motion to intervene is hereby GRANTED.

2. The Lead Plaintiff selection process in the above-captioned actions pursuant to the PSLRA is hereby stayed pending transfer and consolidation.

3. Having considered the factors relevant to determining whether to grant the motion to transfer, it is in the interest of justice and efficiency to transfer this action to the U.S. District Court for the Central District of California for consolidation. Accordingly, the motion to transfer is granted.

4. Plaintiff Carol A. Brown shall promptly issue a notice stating that the Lead Plaintiff selection process is stayed pending resolution of the consolidation described at paragraph 2 of this Order.

**IT IS SO ORDERED.**

**DATED:** _____, 2020          _____
                                    **HON. ANITA B. BRODY**
                                    **UNITED STATES DISTRICT JUDGE**

- 1 -

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Jeffrey L. Kodroff
JEFFREY L. KODROFF